NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1240
_____

UNITED STATES OF AMERICA,

Appellant

v.

REYNALDO LOPEZ SALINAS, a/k/a ADRIAN ARANDA ALVARADO
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 11-cr-00185)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2014

Before:  FISHER, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: September 16, 2014)
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Reynaldo Salinas pleaded guilty to federal drug charges and was sentenced to 72

months in prison. The Government appeals, arguing that Salinas's conviction is subject to

a 10-year mandatory minimum. We agree, and will vacate Salinas's judgment of sentence

and remand for resentencing.

## I

Salinas was arrested as part of a DEA investigation into Pittsburgh-area cocaine distribution and charged, alongside eleven co-defendants, with one count of conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, 21 U.S.C. § 846. In August 2013, Salinas pleaded guilty pursuant to a plea agreement in which the Government agreed to recommend a sentence below the 120-month mandatory minimum, provided the conditions in the federal sentencing "safety valve," 18 U.S.C. § 3553(f), were satisfied. The plea agreement made clear that Salinas would not qualify for the safety valve if he had more than 1 criminal history point under the U.S. Sentencing Guidelines.[1]

Following Salinas's guilty plea, the U.S. Probation Office prepared a presentence investigation report (PSR), in which it determined Salinas had 4 criminal history points: 1 point from a 2009 North Carolina guilty plea for driving while impaired and 3 points from a 2000 Pennsylvania guilty plea for stalking and harassment. Neither Salinas nor the Government objected to the PSR. Salinas later filed a sentencing memorandum stating that at the time he pleaded guilty, both his counsel and the Government assumed he would be eligible for the safety valve. However, by the time of sentencing, Salinas was no

---

[1] This reflects a statutory requirement: a defendant with "more than 1 criminal history point, as determined under the sentencing guidelines," is ineligible for safety valve relief. 18 U.S.C. § 3553(f)(1).

longer under that impression: in his memo, he acknowledged that the stalking conviction "may disqualify" him from safety valve eligibility and subject him to the mandatory minimum. A49. Despite this, he did not seek to withdraw his guilty plea. Rather, he asked the District Court and the Government to "find a way to do justice in this case," which "would include avoidance of the 10 year mandatory imprisonment." A49. Specifically, he argued that the stalking conviction "should be treated as 'stale' and therefore not count against" him for sentencing purposes. A49–50.

At sentencing, the District Court determined that Salinas's total offense level was 29 and his criminal history category was III, resulting in a Guidelines range of 120 to 125 months' imprisonment. Counsel for both parties informed the Court that they initially thought the safety valve would apply. Candidly admitting that he was "hollering against the wind" in light of the mandatory minimum, defense counsel asked the Court to nonetheless consider a 70- to 87-month sentence—Salinas's Guidelines range without the stalking conviction—because "[t]en years does not do justice." A64–65. Government counsel also expressed reservations about the mandatory minimum, but noted that his hands were tied:

> I don't have the capacity to bargain away what the law is. We were under a misapprehension . . . that the record would yield a criminal history category of I. Once it became apparent that that was not the case, my ability to do anything about that evaporated. And I feel badly that that's the case, but that is the case, and as a matter of law, I simply don't have the power to engage in the agreement that we initially started down the road to do.

A65.

3

The District Court proceeded to discount the stalking conviction, noting that it was 14 years old and saying, "I am going to vary on this thing based on what I see as [Salinas's] performance to date," including his work record and family situation. A66–67. Government counsel explained to the Court that he had explored other sentencing possibilities with his supervisors, but had been "given [his] marching orders" and had been told to appeal "anything other than the mandatory sentence." A67. "Well, so be it, and someone else down the road will see if I'm wrong if this doesn't sound right to the powers that be," the District Court replied. A67–68. The Court then imposed a 72-month sentence, calling it "sufficient but not greater than necessary to achieve the intention of the guidelines and of the sentencing code and the background of the Defendant." A70. As expected, this appeal followed.

## II

Even in the post-*Booker* era of advisory Guidelines and considerable sentencing discretion, we are constrained by the will of Congress, which "our Constitution entrusts . . . with the power to define crimes and set punishment for those crimes." *United States v. Kennedy*, 682 F.3d 244, 260 (3d Cir. 2012) (citing *Bell v. United States*, 349 U.S. 81, 82 (1955)). Indeed, "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States*, 500 U.S. 453, 467 (1991). Although our role is always to do justice, we do not have unlimited latitude; "[o]urs is a nation of laws, not judges." *United States v. Higdon*, 638 F.3d 233, 247 (3d

4

Cir. 2011). Subject to the limits of the Constitution, we must uphold legislative choices on criminal punishment, "made as they are by our elected representatives." *Kennedy*, 682 F.3d at 260. This is so regardless of whether we personally agree with those choices. "Sentencing is one of the most difficult tasks a district court judge must perform," especially "when a judge believes that the punishment mandated by Congress is not a just and proportional sanction for the conduct involved." *Id*. But "[t]o the extent that the District Court was dissatisfied with this state of affairs, the remedy lies with Congress." *Id*. Indeed, we note that in recent years Congress has acted to reduce mandatory minimums for some drug offenses. *See, e.g.*, *United States v. Savani*, 733 F.3d 56, 60 (3d Cir. 2013) (describing the Fair Sentencing Act of 2010).

As the law now stands, however, 21 U.S.C. § 841(b)(1)(A) states that a defendant convicted of trafficking 5 kilograms or more of cocaine *shall* be sentenced to at least 10 years' imprisonment—a punishment reflecting Congress's view on the seriousness of the crime. A district court cannot impose a sentence below that minimum unless the Government files a substantial assistance motion, 18 U.S.C. § 3553(e), or the defendant qualifies for the safety valve, 18 U.S.C. § 3553(f). It is undisputed that neither happened here. Therefore, the 10-year mandatory minimum applies to Salinas's conviction.

\* \* \*

For the reasons stated, we will vacate Salinas's judgment of sentence and remand for resentencing in accordance with this opinion.

5