NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2618
_____

UNITED STATES OF AMERICA,

v.

JESSE GOLDEN,
                          Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-19-cr-00545-001)
District Judge: Honorable Gerald J. Pappert

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on November 10, 2022

Before: CHAGARES, Chief Judge, JORDAN, and SCIRICA, *Circuit Judges.*

(Filed:  March 10, 2023)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

## I.

Jesse Golden was convicted of possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). As Golden had three felony drug convictions, he was subject to the mandatory minimum sentence under 18 U.S.C. § 924(e) (the Armed Career Criminal Act, or ACCA). On appeal, Golden challenges: (1) the denial of his motion to suppress the gun and ammunition found in his home pursuant to a search warrant; (2) the alleged multiplicity of his indictment; (3) ACCA's applicability; (4) the District Court's calculations pursuant to the sentencing guidelines; and (5) the denial of his motion to bifurcate his trial so that the jury considering his possession charges would not learn of his prior felony convictions. For the reasons below, we will affirm the District Court.

## II.

While monitoring Instagram, a Philadelphia police officer noticed a video that a man in his district had posted to his "story." In the video, two men are shown inside a car, one of whom is briefly visible holding a gun with black paint and brand emblems on the grip. The officer did not recognize the man holding the gun, but another officer identified him as Jesse Golden. The video included nothing to indicate when or where it was filmed. The officer, however, believed that Golden looked the same in the video as he did during the officer's recent encounters with him.

Detectives determined that the gun appeared to be a real weapon, that Golden had felony drug convictions, and that Golden had provided a residential address during a recent

2

arrest which matched his Department of Motor Vehicles records. Based on this information, the detectives obtained a search warrant for that address. Multiple people were present when officers executed the warrant. Golden was in a second floor bedroom. In that bedroom, officers found documents in Golden's name and a box of .22 caliber ammunition. Officers also recovered a .22 caliber revolver from a drawer on the first floor. The detectives believed that the revolver, which had distinctive black paint and emblems, was the same gun Golden was holding in the video. Forensic analysts concluded that a DNA sample from the gun, a mixture from at least three people, very likely included Golden's DNA. Golden was then charged with being a felon in possession of the gun and ammunition. *See* 18 U.S.C. § 922(g)(1), § 924(e).

Before trial, Golden moved to suppress the gun and ammunition, to dismiss the indictment as multiplicitous, and to bifurcate his trial. The District Court denied all of his motions. A jury convicted Golden of possessing the gun and the ammunition. The District Court merged the two counts at sentencing, imposing the mandatory minimum of 180 months imprisonment, three years of supervised release, and a $100 special assessment. Golden then took this timely appeal.

Golden now challenges the denial of his pretrial motions and raises two sentencing errors.[1] We will first address the pretrial motions, beginning with Golden's motion to suppress the gun and ammunition, and then turn to the sentencing challenges.[2]

A.

The District Court properly denied Golden's motion to suppress. Golden argues the warrant affidavit lacked probable cause because it failed to illustrate a sufficient nexus between the alleged possession offense and the residence to be searched. The warrant affidavit describes the Instagram video and confirms Golden's address, but it does not explicitly connect the gun shown in the video to Golden's address. The Government counters that the Magistrate Judge had a substantial basis to find probable cause based on common sense inferences. At minimum, the Government argues, the good faith exception applies because a reasonably well trained officer could have believed that reliance on common sense inferences to connect the video to the residence was acceptable. Although more evidence connecting Golden's possession of the gun to his residence would have

---

[1] Golden raises his bifurcation challenge and one sentencing error only to preserve them for future review. He concedes that binding precedent on these issues is not in his favor. *See United States v. Jacobs*, 44 F.3d 1219, 1223 (3d Cir. 1995) (rejecting bifurcation of single offense of being a felon in possession of a weapon and approving persuasive caselaw holding that bifurcation in such a scenario is equivalent to modifying the nature of the offense); *United States v. Blair*, 734 F.3d 218, 228 (3d Cir. 2013) (reaffirming that a judge may determine the fact of a prior conviction for purposes of the Armed Career Criminal Act (ACCA) without violating the Sixth Amendment); *Shular v. United States*, 140 S. Ct. 779, 784 (2020) (holding that a state offense can qualify as a "serious drug offense" under ACCA even if it is broader than the conduct specified in ACCA's text).
[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

4

strengthened the affidavit, we agree with the Government that, at minimum, the good faith exception applies here.

We use a two-part standard of review when a defendant challenges the denial of a motion to suppress on grounds that the search warrant lacked probable cause. First, we exercise plenary review over the legal determinations a district court makes when considering a motion to suppress. *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012). This includes a district court's evaluation of the Magistrate Judge's probable cause determination. *United States v. Williams*, 974 F.3d 320, 350 (3d Cir. 2020) (citing *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010)); *see also United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (approving use of this standard of review when the district court does "not question the facts contained in the affidavit") (quoting *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)).

Second, we confirm that the Magistrate Judge had a substantial basis for finding that probable cause exists. *Stearn*, 597 F.3d at 554; *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see also United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983) (cautioning that deference "does not mean that reviewing courts should simply rubber stamp a magistrate judge's conclusions"). We do not make our own probable cause determination or consider how other Magistrate Judges may have evaluated the warrant affidavit. *Jones*, 994 F.2d at 1057; *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). This deferential review of the Magistrate Judge's determination is the same standard the district court uses. *Stearn*, 597 F.3d at 554.

A Magistrate Judge properly concludes that probable cause exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. This is a practical, commonsense inquiry. *Id.* at 232 ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.").

Direct evidence linking the alleged offense to the place to be searched is not required. *United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000); *Conley*, 4 F.3d at 1207; *Stearn*, 597 F.3d at 554; *Jones*, 994 F.2d at 1056. The Magistrate Judge may identify a sufficient nexus between an alleged offense and the place to be searched by drawing "reasonable inferences." *Hodge*, 246 F.3d at 305–06. Probable cause can be reasonably inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." *Jones*, 994 F.2d at 1056. It is reasonable, for example, to infer that firearms are likely to be kept at a suspect's residence. *Id.* (citing *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (collecting cases)).

As Magistrate Judges may draw reasonable inferences, and our review is deferential, a lack of caselaw approving specific types of inferences is not enough to render a warrant constitutionally defective. We do caution, however, that an affidavit which relies only on inferences to connect an alleged offense to the place to be searched may be on unstable ground. In situations where it is not reasonable to infer that suspects would keep contraband or other evidence in their residences, it may follow that additional information is necessary

6

to show a sufficient nexus. *See United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002) (affirming the district court's denial of appellant's motion to suppress where there was "profuse" evidence appellant was "actually a drug dealer," the place to be searched was his residence, and "the home contain[ed] contraband linking it to the dealer's drug activities); *Hodge*, 246 F.3d at 306–07 (approving warrant with information connecting suspect's residence to his alleged drug dealing); *see also Virgin Islands v. John*, 654 F.3d 412, 418–21 (3d Cir. 2011) (finding the good faith exception inapplicable where the warrant to search the defendant's home for evidence of sexual assault and child pornography included no facts about the latter offense, requiring the Magistrate Judge to impermissibly infer a nexus between the two offenses).

Even in a situation where it is reasonable to infer that evidence is likely to be found at a suspect's residence, the Magistrate Judge must still consider whether a given affidavit actually supports a finding of probable cause. We have yet to decide whether the mere fact that a suspect committed a crime involving a gun "automatically provides a magistrate with enough information to approve a search of a suspect's home." *See Jones*, 994 F.2d at 1056.

In *Jones*, we declined to answer that question because we found that the warrant at issue had facts which "provided a nexus" between a robbery and the co-defendants' residences. *Id.* at 1056. The Government contends these facts only related to two of the co-defendants, and we relied entirely on inferences to connect the third's residence with the robbery and uphold the warrant. These inferences, however, were strengthened by the evidence tying the other co-defendants to the robbery. We emphasized that the third co-defendant "did not act alone," noting that his residence was not only near the scene of the

crime but also his co-defendants' residences, which were "linked to the crime" with evidence, not inference. *Id.* at 1057.

Golden has no co-defendant. The Instagram video lacks information about the date and location of filming. But a Magistrate Judge may reasonably infer that firearms are likely to be kept at a suspect's residence. *Jones*, 994 F.2d at 1056. A Magistrate Judge may also reasonably infer that the video was filmed close to the time it was posted. The officer who identified Golden believed he looked the same in the video as he did during the officer's recent encounters with him.

Even if we were to find these inferences insufficient in the absence of additional information, the good faith exception applies. *See United States v. Caesar*, 2 F.4th 160, 169 (3d Cir. 2021) (describing the good faith exception as "forbidding suppression where officers act in 'good faith' or 'objectively reasonable reliance' on a search warrant later held to be defective") (citations omitted). Golden argues this is one of the rare situations in which an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010). It is not. As noted above and by the District Court, our caselaw in this area is "somewhat unsettled." *United States v. Golden*, No. 19-545, 2020 U.S. Dist. LEXIS 96305, at *17 (E.D. Pa. June 2, 2020); *see Hodge*, 246 F.3d at 309 (indicating that the question *Jones* did not answer—whether the fact that an offense involves a gun is sufficient for probable cause—is still open). It was not unreasonable for the affiant here to conclude that, between facts and reasonable inferences, the affidavit properly supported a probable cause finding.

B.

The merger of Golden's two counts of conviction for purposes of sentencing remedied any double jeopardy concerns, so we need not analyze whether his indictment was multiplicitous.[3] An indictment is multiplicitous, and so violates the Double Jeopardy Clause, if it has two or more counts that charge a defendant for the same conduct. *See United States v. Kennedy*, 682 F.3d 244, 254–55 (3d Cir. 2012). The primary danger of multiplicity is excessive punishment. *See United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992) (citing *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (defining the interest protected in the multiple punishment context as "ensuring that the total punishment [does] not exceed that authorized by the legislature")). Accordingly, the proper remedy is merging counts at sentencing. *United States v. Centeno*, 793 F.3d 378, 392 (3d Cir. 2015) (citing *United States v. Tann*, 577 F.3d 533, 543 (3d Cir. 2009)); *Kennedy*, 682 F.3d at 253–54 (citing *Pollen*, 978 F.2d at 83). The District Court merged Count 1 and Count 2, so Golden's challenge is moot.[4]

---

[3] Our review is plenary. *United States v. Kennedy*, 682 F.3d 244, 255 n.8 (3d Cir. 2012).

[4] Golden urges us to find that submitting both counts to the jury was prejudicial—requiring a new trial—because the evidence that he possessed a gun could have encouraged the jury to convict him of possession of the ammunition as well. There are cases in which a district court should instruct the prosecution to choose between counts before trial, lest the jury assume that "with so many charges pending the defendant must be guilty on at least some of them." *United States v. Polizzi*, 257 F.R.D. 33, 36–37 (E.D.N.Y.) (Weinstein, J.). This is not one of those cases. The practical effect of merging the two counts at sentencing was to nullify Golden's conviction of possessing the ammunition.

C.

Golden argues he is not subject to ACCA because his prior convictions were all part of a continuous course of conduct. *See* 18 U.S.C. § 924(e) (requiring that predicate offenses occur on "occasions different from one another").[5] Golden has three convictions for possession with intent to deliver cocaine. All three offenses—which occurred in 2010, 2013, and 2014, respectively—involved a small amount of cocaine and took place no more than a block away from each other. The Government concedes that, under *Wooden v. United States*, 142 S. Ct. 1063 (2022), the "different occasions" determination is a factual inquiry to be resolved by a jury, falling outside the narrow facts that judge may determine under *Almendarez-Torres v. United States*, 532 U.S. 224 (1998). Nonetheless, the Government argues any error in failing to submit the *Wooden* issue to a jury here was harmless because the record makes clear beyond a reasonable doubt that a rational jury would have concluded that Golden's offenses were committed on different "occasions." *See Neder v. United States*, 527 U.S. 1, 12-13 (1999) (holding that where the court decides an element rather than submitting it to the jury, the harmless error analysis applies). We agree.

It may be that Golden's convictions do not at first glance fit the mold of "a large number of fairly serious crimes" committed as a defendant's "means of livelihood." *Wooden v. United States*, 142 S. Ct. at 1074 (describing ACCA's purpose as targeting "career" offenders). But there is no question that offenses committed months apart qualify

---

[5] Our review of challenges to an ACCA enhancement is plenary. *United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016).

10

as separate offenses under ACCA. To find otherwise would mean that, as a practical matter, a vanishingly small number of drug offenses would qualify as predicates under ACCA. Golden offers no evidence that ACCA's drafters intended such a result.[6]

D.

For the above reasons, we will AFFIRM the judgment of conviction and sentence.

---

[6] Because Golden is subject to ACCA, we need not address his challenge to the District Court's calculations under the sentencing guidelines.