SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Rashaun Bell (A-75-20) (084657)**

**Argued January 19, 2022 -- Decided May 16, 2022**

**FUENTES, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers whether N.J.S.A. 2C:11-5.1, which criminalizes the act of leaving the scene of an accident resulting "in the death of another person," can be charged separately for each victim killed in a single accident.  The Court also considers the Appellate Division's decision to amend sua sponte the sentence imposed by the trial court, which had approved the plea agreement negotiated by the parties.

In October 2017, defendant Rashaun Bell struck with his car a bicycle ridden by fifteen-year-old Elionel Jimenez and sixteen-year-old Alexander Antonio Rosas Flores.  Tragically, both boys were killed.  Defendant was charged with two counts of leaving the scene of an accident in violation of N.J.S.A. 2C:11-5.1, and two counts of causing the death of Elionel and Alexander while operating a vehicle without a driver's license, in violation of N.J.S.A. 2C:40-22(a).

Defendant moved to dismiss the second count of leaving the scene of a fatal accident under N.J.S.A. 2C:11-5.1, arguing that the act of leaving can be prosecuted once per accident, regardless of the number of fatalities caused by the accident.  The trial judge denied the motion, finding that the death of each victim constituted an element of separate offenses and defendant could be charged accordingly.

Defendant thereafter pled guilty to two counts of leaving the scene of a fatal accident.  He expressly reserved the right to appeal the trial court's interpretation of N.J.S.A. 2C:11-5.1.  In exchange, the State agreed to dismiss the remaining counts of the indictment and seek a five-year term of imprisonment for each count under N.J.S.A. 2C:11-5.1, to run consecutively.  The trial court accepted the terms of the plea agreement and sentenced defendant to a cumulative ten-year term of imprisonment.

The Appellate Division reversed the trial court's ruling, holding that, "[w]here a defendant leaves the scene of a single accident that resulted in the death of another person, the State may not properly charge him or her with multiple counts of this

1

offense based on the number of victims who died in the accident." The Appellate Division thereafter: (1) reversed one of defendant's convictions under N.J.S.A. 2C:11-5.1; (2) vacated the sentence imposed by the trial court related to that conviction; (3) upheld the remaining conviction of second-degree leaving the scene of a fatal accident; (4) affirmed the five-year sentence previously imposed by the trial court on that count; and (5) remanded the case to the trial court "for the limited purpose of issuing an amended judgment of conviction consistent with this opinion."

The Court granted the State's petition for certification. 247 N.J. 399 (2021).

**HELD:** N.J.S.A. 2C:11-5.1 applies to the act of fleeing from the scene of an accident. The number of fatalities that may result from the accident is not an element of the offense and thus only one count of the offense may be charged per accident, regardless of the number of victims. Although the Appellate Division correctly reversed the trial court's judgment with regard to the number of counts that could be charged, the appellate court should have remanded the case to the trial court to permit the parties to negotiate a new plea agreement or go to trial rather than amend the sentence in a manner not contemplated by the plea agreement.

1. Nearly twenty-five years ago, the Legislature adopted N.J.S.A. 2C:11-5.1 to deter "hit and run" accidents in which one or more people are killed. Up to that point, leaving the scene of a motor vehicle accident constituted only a violation of the motor vehicle code under N.J.S.A. 39:4-129. N.J.S.A. 2C:11-5.1 created a third-degree offense for a driver who knowingly absconded from the scene of an accident resulting in the death of another person under circumstances that also violated certain requirements codified in N.J.S.A. 39:4-129. And the Legislature has twice amended N.J.S.A. 2C:11-5.1 to augment its penal consequences. It is now a second-degree offense, punishable by a term of imprisonment "which shall be fixed by the court and shall be between five years and [ten] years." N.J.S.A. 2C:43-6(a)(2). In State v. Fisher, the Appellate Division explained the underlying focus in N.J.S.A. 2C:11-5.1 is the driver's response to the accident, not the number of deaths that result therefrom. See 395 N.J. Super. 533, 547 (App. Div. 2007). (pp. 14-18)

2. In considering whether a violation of N.J.S.A. 2C:11-5.1 occurs on a per-accident or a per-victim basis, the Court examines the text of the statute. The offense can be distilled to four elements: (1) the driver "knows" the driver was "involved in an accident"; (2) the driver "knowingly" leaves the scene of the accident; (3) the driver violates the requirements of N.J.S.A. 39:4-129; and (4) the accident "results" in the death of another person. Nothing in the language of N.J.S.A. 2C:11-5.1 reveals or suggests the Legislature intended to charge a defendant based on the number of fatalities that result from the accident. The Court agrees with the Appellate Division's analysis in Fisher that the statute's plain language focuses on the driver's response and concludes that N.J.S.A. 2C:11-5.1 applies only to the act of fleeing

2

from the scene of an accident. The number of fatalities that may result from the accident is not an element of this offense. Most states that have considered similar statutes have reached the same conclusion. (pp. 19-24)

3. That conclusion, moreover, accords with the public policy underpinning N.J.S.A. 2C:11-5.1 -- to deter drivers from absconding from the scene of an accident that results in the death of another person. The State retains the authority to prosecute those drivers who violate the rights of the victims involved in an accident if the evidence so warrants. The Legislature specifically identified the victim-centric offenses that shall not merge with a conviction under N.J.S.A. 2C:11-5.1 -- namely, aggravated manslaughter, reckless vehicular homicide, and strict liability homicide. Each act of manslaughter and homicide may be prosecuted separately, and a flight charge may also be imposed, where appropriate, no matter how many counts of per-victim offenses are charged. But N.J.S.A. 2C:11-5.1 is not itself such a victim-centric offense. Under the principle of lenity, if the Legislature intended to hold a defendant responsible based upon the number of victims of the accident, and not for the singular act of fleeing the scene, then it is incumbent upon the Legislature to clarify the contours of criminal activity. And because N.J.S.A. 2C:11-5.1 focuses on the act of leaving the scene of the accident, the Court rejects the argument that including multiple counts based on a single accident does not violate the doctrine of multiplicity. (pp. 25-29)

4. Turning the to the amendment of defendant's sentence, the Court first reviews State v. Rodriguez, in which the Court merged two of defendant's convictions and then remanded for resentencing. 97 N.J. 263, 266, 277 (1984). Plea agreements are important components of this country's criminal justice system. Although a trial court is not bound by the terms of a plea agreement, it is clear from the record the judge was significantly influenced by the agreed-to terms in this case. The Rodriguez Court's conclusion applies with equal force here, and the appellate court should have remanded the matter to the trial court to allow defendant to either negotiate a new plea agreement with the State that the sentencing court finds acceptable or withdraw his plea and stand trial. If the Court were to uphold the approach adopted here by the Appellate Division, the penal outcome would be wholly unrelated to the legitimate factors trial courts are required to follow in dispensing criminal punishment. The exercise of appellate original jurisdiction over sentencing should not occur regularly; in the face of deficient sentences, a remand to the trial court for resentencing is strongly to be preferred. This case presents no compelling grounds for departure from that general principle. (pp. 29-36)

**AFFIRMED in part, REVERSED in part.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.**

3

# SUPREME COURT OF NEW JERSEY

## A-75 September Term 2020

## 084657

State of New Jersey,

Plaintiff-Appellant,

v.

Rashaun Bell, a/k/a
BG Rashaun Rah,

Defendant-Respondent.

On certification to the Superior Court, Appellate
Division.

| Argued | Decided |
|---|---|
| January 19, 2022 | May 16, 2022 |

Erin M. Campbell, Assistant Prosecutor, argued the cause
for appellant (Esther Suarez, Hudson County Prosecutor,
attorney; Erin M. Campbell, on the brief).

Susan L. Romeo, Assistant Deputy Public Defender,
argued the cause for respondent (Joseph E. Krakora,
Public Defender, attorney; Susan L. Romeo, on the brief).

Steven A. Yomtov, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Andrew J. Bruck, Acting Attorney General, attorney;
Steven A. Yomtov, of counsel and on the brief).

Zachary A. Levy argued the cause for amicus curiae
Association of Criminal Defense Lawyers of New Jersey

(Pashman Stein Walder Hayden, attorneys; Zachary A. Levy and CJ Griffin, on the brief).

JUDGE FUENTES (temporarily assigned)
delivered the opinion of the Court.

In this case, a car driven by defendant Rashaun Bell crashed into two teenaged boys riding a bicycle on a roadway in Jersey City. Both boys died as a result of the accident. Defendant and his three passengers fled the scene. Defendant was eventually apprehended and indicted on two counts of leaving the scene of an accident in violation of N.J.S.A. 2C:11-5.1. Defendant moved to dismiss one of the counts, arguing that, as applied here, N.J.S.A. 2C:11-5.1 violated the rule against multiplicity.

The trial court denied defendant's motion and concluded N.J.S.A. 2C:11-5.1 holds a driver who knowingly flees the scene of an accident criminally responsible for each person who dies in the accident. Defendant thereafter pled guilty, pursuant to an agreement negotiated with the State, to both counts of the indictment. Consistent with the plea agreement, the trial court sentenced defendant to two consecutive five-year terms of imprisonment. In response to defendant's appeal, the Appellate Division reversed the trial court's ruling, dismissed one of the convictions, vacated the five-year term of

2

imprisonment for that conviction, and remanded the matter to the trial court to amend the judgment of conviction accordingly.

In response to the State's appeal, we now hold the plain text of N.J.S.A. 2C:11-5.1 reveals the Legislature intended to criminalize the act of leaving the scene of an accident resulting "in the death of another person," in violation of the tenets of order and civility codified under N.J.S.A. 39:4-129, independent of the number of fatalities. Stated differently, the number of fatalities caused by the accident is not an element of the second-degree offense codified in N.J.S.A. 2C:11-5.1.

This outcome is consistent with this Court's well-settled principle of statutory construction that looks to a statute's plain language as the "best indicator" of legislative intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). Beyond that analytical threshold, we construe N.J.S.A. 2C:11-5.1 consistent with the rule against multiplicity derived from the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which prohibits "multiple punishments for the same offense." See State v. Widmaier, 157 N.J. 475, 489-90 (1999). Finally, this interpretation of N.J.S.A. 2C:11-5.1 is in harmony with the doctrine of lenity.

We thus affirm the part of the Appellate Division's judgment that construed N.J.S.A. 2C:11-5.1 consistent with this Court's holding. We

3

reverse, however, the Appellate Division's judgment to amend sua sponte the sentence imposed by the trial court in a manner not contemplated by the terms of the plea agreement negotiated by the parties in good faith and approved by the trial court under Rule 3:9-2. Under these circumstances, the appellate court should have remanded the case to the trial court to permit the parties to negotiate a new plea agreement that the trial court finds acceptable or otherwise schedule the case for trial.[1] See State v. Jarbath, 114 N.J. 394, 411 (1989).

## I.

## A.

The salient facts of this case are undisputed. At approximately 2:25 p.m. on October 18, 2017, twenty-year-old Rashaun Bell was driving a 2010 four-door Nissan Maxima northbound on the Secaucus off-ramp for Routes 1 and 9 in Jersey City. At the same time, fifteen-year-old Elionel Jimenez and sixteen-year-old Alexander Antonio Rosas Flores were riding a bicycle down a steep hill, heading westbound on Leonard Street on a path that intersected with the

---

[1] This aspect of the State's appeal is moot because Rashaun Bell died in November 2021. This issue, however, is "of sufficient public importance, likely to surface again, to warrant our deciding it, even in the absence of an actual controversy between the litigants." State v. Kovack, 91 N.J. 476, 486 (1982).

road on which defendant was traveling. This mode of bicycling required Elionel to pedal standing up while Alexander remained seated.

Tragically, defendant's car crashed into the boys' bicycle at a perpendicular angle. The speed limit in the area where the accident occurred is twenty-five miles per hour. A Jersey City Police Sergeant, who testified before the grand jury, estimated defendant was traveling approximately double the speed limit when the car struck the boys' bicycle.

Elionel was found "face down on the ground with a large laceration to his head." He was pronounced dead at the scene at 2:41 p.m. by a physician from the Jersey City Medical Center. Police officers found Alexander on Tonnelle Avenue; the force of the impact propelled him over a nine-foot fence where he landed twenty-seven feet below. Medical staff transported him to the Jersey City Medical Center, where he succumbed to his injuries the following day.

A detective from the Homicide Unit of the Hudson County Prosecutor's Office, who responded to the accident scene, testified before the grand jury that the car was "abandoned" approximately 600 feet from the point of impact. The four occupants of the vehicle fled the scene on foot.[2] Law enforcement

---

[2] Two women, who were in the back seat of the car at the time of the accident, returned to the scene after being chased down by witnesses. One of the

investigators searched the Nissan Maxima, pursuant to a warrant, and retrieved a court document addressed to defendant as well as an identification bracelet with defendant's name, photograph, and date of birth. The State also presented a video showing defendant fleeing through a backyard, about two blocks from the scene. Defendant did not have a driver's license.

B.

The Assistant Prosecutor instructed the grand jury that, under N.J.S.A. 2C:11-5.1, defendant was "charged with two counts:  one count for Elionel Jimenez and one count for Alexander Antonio Rosas Flores."  Consistent with those legal instructions, the grand jury returned an indictment charging defendant with two counts of second-degree leaving the scene of an accident in violation of N.J.S.A. 2C:11-5.1, and two counts of third-degree causing the death of Elionel and Alexander while operating a vehicle without a driver's license, in violation of N.J.S.A. 2C:40-22(a).

Defendant moved to dismiss the second count of leaving the scene of a fatal accident under N.J.S.A. 2C:11-5.1.  Defense counsel argued the statute reflects the Legislature's intent to punish drivers for leaving the scene of a

women, who had been in a dating relationship with defendant, was charged with third-degree hindering apprehension, N.J.S.A. 2C:29-3(a)(7), after falsely identifying defendant.  The other identified defendant as the driver.  The front-seat passenger was never identified.

6

fatal accident or failing to report they were involved in such an accident, regardless of the number of fatalities caused by the accident. Relying on United States v. Kennedy, 682 F.3d 244, 254-55 (3d Cir. 2012), defense counsel urged the motion judge to dismiss the multiplicitous count because it would violate the "Double Jeopardy Clause's protection against cumulative punishment."

In opposition, the State focused on the part of N.J.S.A. 2C:11-5.1 that refers to the driver "knowingly" leaving the scene of the accident "under circumstances that violate the provisions of [N.J.S.A.] 39:4-129." The prosecutor argued the specific reference to the obligations imposed on drivers under Title 39 indicated the Legislature's intent to hold a defendant criminally responsible under N.J.S.A. 2C:11-5.1 for each death caused by the accident.

The trial judge denied defendant's motion in an oral opinion delivered from the bench. Because the statute "imposes culpability" when a driver leaves the scene of an accident that results in the death of "another person," the judge inferred the Legislature intended "the death of each victim [to stand] as a separate and distinct element of two separate offenses that may be charged separately on the indictment." Thus, the judge found the death of each victim constituted an element of separate offenses and defendant could be charged accordingly. The motion judge also found support for his analysis in the part

7

of N.J.S.A. 2C:11-5.1 that prohibits a conviction of this offense to merge with other homicide offenses -- i.e., aggravated manslaughter, N.J.S.A. 2C:11-4, reckless vehicular homicide, N.J.S.A. 2C:11-5, or strict liability vehicular homicide, N.J.S.A. 2C:11-5.3 -- and expressly requires a court to impose a sentence for a violation of N.J.S.A. 2C:11-5.1 to run consecutively to multiple sentences of imprisonment for more than one offense.

Defendant thereafter pled guilty to two counts of second-degree leaving the scene of a fatal accident, and expressly reserved the right to appeal the trial court's interpretation of N.J.S.A. 2C:11-5.1. In exchange, the State agreed to dismiss the remaining counts of the indictment and seek a five-year term of imprisonment for each count under N.J.S.A. 2C:11-5.1, to run consecutively. The trial court accepted the terms of the plea agreement and sentenced defendant to a cumulative ten-year term of imprisonment.

## C.

Defendant appealed, arguing that the trial court erred when it refused to dismiss one of the counts in the indictment for the single act of leaving the scene of an accident. Defendant urged the Appellate Division to vacate his conviction because the multiple charges violated double jeopardy protections espoused in the rule against multiplicity. The State argued the trial court correctly concluded N.J.S.A. 2C:11-5.1 requires "the death of a single person

8

needs to be proven to sustain a count. Thus, the death of each victim stands as a separate and distinct element of two separate offenses that may be charged separately on the indictment."

In an unpublished opinion, the Appellate Division reversed the trial court's ruling. The Appellate Division held that,

> [w]here a defendant leaves the scene of a single accident that resulted in the death of another person, the State may not properly charge him or her with multiple counts of this offense based on the number of victims who died in the accident. Instead, and as expressly permitted by N.J.S.A. 2C:11-5.1, the State may address the harm to victims by charging the defendant, as appropriate, with aggravated manslaughter under N.J.S.A. 2C:11-4, reckless vehicular homicide under N.J.S.A. 2C:11-5, or strict liability vehicular homicide under N.J.S.A. 2C:11-5.3.

The Appellate Division thereafter: (1) reversed one of defendant's convictions under N.J.S.A. 2C:11-5.1; (2) vacated the sentence imposed by the trial court related to that conviction; (3) upheld the remaining conviction of second-degree leaving the scene of a fatal accident; (4) affirmed the five-year sentence previously imposed by the trial court on that count; and (5) remanded the case to the trial court "for the limited purpose of issuing an amended judgment of conviction consistent with this opinion."

The State filed a motion for reconsideration of the part of the Appellate Division's opinion that sua sponte resentenced defendant to a five-year term.

9

Relying on State v. Roddy, 210 N.J. Super. 62, 66 (App. Div. 1986) (citing State v. Rodriguez, 97 N.J. 263, 276 (1984)), the State argued the appellate court should have remanded the case to the Criminal Part for resentencing.  In response, defendant argued that remanding the case to the trial court for resentencing would violate double jeopardy as well as his expectation of finality.  State v. Sanders, 107 N.J. 609, 619 (1987).  In an order dated June 26, 2020, the Appellate Division denied the State's motion for reconsideration without further comment.

This Court granted the State's petition for certification, 247 N.J. 399 (2021), to decide, as a matter of first impression, whether a vehicle operator who knowingly (1) is involved in an accident and (2) leaves the scene of that accident, in violation of N.J.S.A. 39:4-129, can be held criminally responsible for each fatality caused by the accident under N.J.S.A. 2C:11-5.1.  We also granted leave to appear as amici curiae to the Attorney General and the Association of Criminal Defense Lawyers of New Jersey (ACDL).

## II.

### A.

Before this Court, the State contends the Appellate Division erroneously construed N.J.S.A. 2C:11-5.1 to limit the scope of culpability to the act of leaving the scene of a fatal accident, regardless of the number of fatalities.

10

The State argues one of the elements of this second-degree offense is "that the accident resulted in the death of another person" -- "not that it must result in 'the death of another person or persons'" -- and that each death caused by the accident may therefore be prosecuted separately in keeping with N.J.S.A. 2C:1-8. The State argues that the increase in penalties over the years for violating N.J.S.A. 2C:11-5.1 reflects the Legislature's intent to hold a driver who knowingly leaves the scene of a fatal accident criminally responsible for each life lost. Further, the State argues the Appellate Division misapplied the holding in State v. Hill-White to conclude the rule against multiplicity prohibits charging defendant under N.J.S.A. 2C:11-5.1 based on the number of fatalities involved in the accident. 456 N.J. Super. 1, 11 (App. Div. 2018).

Finally, the State argues that the Appellate Division usurped the role of the trial court and vitiated the terms of the plea agreement by sua sponte resentencing defendant to a five-year term of imprisonment because the remand ordered by the Appellate Division merely directed the trial court to perform the ministerial act of amending the judgment of conviction to conform with this sentence. The State argues this limited remand "removed any degree of deference" to the trial court's authority to reject or accept the plea bargain and thereafter determine an appropriate sentence. Thus, if this Court were to affirm the Appellate Division's interpretation of N.J.S.A. 2C:11-5.1, the State

11

requests that we remand the case to the trial court to permit the parties to negotiate a new plea agreement or schedule the case for trial.

B.

Defendant urges this Court to follow the Appellate Division's reasoning and hold that a violation of N.J.S.A. 2C:11-5.1 "occurs whenever a driver leaves the site, regardless of whether that person is at fault with respect to the accident and regardless of the number of victims involved," a construction consistent with "'the overwhelming weight' of judicial authority from other states with 'very similar' criminal statutes."

With respect to the Appellate Division's denial of the State's motion for reconsideration of its decision to resentence defendant sua sponte based on its construction of the statute, defendant argues any other sentence would have violated his federal and state guarantees against double jeopardy. Defendant argues the protection against double jeopardy attached after he began serving the sentence imposed by the trial court. According to defendant, any increase in the sentence would constitute a violation of his right against double jeopardy. Defendant also argues the State's reliance on Rodriguez, 97 N.J. at 273-74, and other similar cases, is misplaced "because they all involve appeals after the defendant had exercised his right to trial." According to defendant,

12

adopting the State's argument would allow the trial court to resentence him in a manner not contemplated by the terms of the plea agreement.

C.

Amicus curiae the Attorney General's participation is limited to the Appellate Division's construction of N.J.S.A. 2C:11-5.1. The Attorney General discusses the history that prompted the passage of this legislation at length and argues that the Appellate Division's reasoning undermines the public policy that favors a victim-centric analytical approach.

The Attorney General acknowledges "[t]he majority of states that have considered this issue have exclusively focused on the singular act of leaving the scene of an accident, and not the number of victims involved . . . ." The courts in those states have thus concluded "charging multiple counts of fleeing the scene of a fatal accident violates the rule against multiplicity under the Double Jeopardy Clause." The Attorney General nevertheless argues the legislatures in those states used the phrase "any person," while the New Jersey Legislature used the term "another person." The Attorney General views this phrase to mean that a driver owes a duty to each victim who perishes in the accident and can thus be charged and punished for multiple violations of the statute. Finally, the Attorney General joins the State's position and argues the Appellate Division misapplied the holding in Hill-White.

13

D.

Amicus curiae ACDL urges this Court to affirm the Appellate Division's decision reversing one of defendant's two convictions of N.J.S.A. 2C:11-5.1, vacating the five-year term of imprisonment imposed by the trial court on the second conviction, and amending the remaining count to include the two teenaged boys who died in the accident. The ACDL argues "the Appellate Division appropriately held that the State violated the rule against multiplicity by charging defendant twice with violating N.J.S.A. 2C:11-5.1 for leaving the scene of a single accident, and properly reversed one of those convictions." Finally, the ACDL argues that, when the legislative intent cannot be discerned from the plain language of the statute or other extrinsic factors, the rule of lenity requires this Court to construe the statute in a manner most favorable to defendant.

III.

Motor vehicles have been part of our lives and our culture for more than a century, permanently altering the way societies function, and they continue to be as ubiquitous as our cellphones. A motor vehicle operator must be licensed by the New Jersey Motor Vehicle Commission, N.J.S.A. 39:3-10, and is required to follow the rules of the road codified by the Legislature under Title 39. This is so because the misuse of the driving privilege -- e.g., a text

14

message that diverts the driver's eyes or attention for a few critical seconds, an inexcusable act of self-indulgence with alcohol or other forms of intoxication, or a deranged belief that the rules of the road are not applicable to the driver -- can have catastrophic consequences, including indiscriminately taking a human life.[3]

Nearly twenty-five years ago, the Legislature adopted N.J.S.A. 2C:11-5.1 to deter drivers from absconding from the scene of a fatal accident in defiance of the rules of the road codified under N.J.S.A. 39:4-129. The number of fatalities involved in the accident is not an element of this second-degree offense. Specifically, the Legislature enacted N.J.S.A. 2C:11-5.1 to deter "hit and run" accidents in which one or more people are killed.[4]

In a press release dated June 4, 1997, Governor Christine Whitman characterized "hit and run drivers" involved in these types of accidents as

---

[3] The New Jersey State Police compiles data regarding fatal motor vehicle crashes and reports the statistics yearly. In 2020, the most critical period of the COVID-19 pandemic, this authoritative report revealed there were "a total of 55 hit and run fatal crashes involving 96 vehicles. The victims were comprised of 8 drivers, 3 passengers, 39 pedestrians and 5 pedal cyclists." N.J. State Police Fatal Accident Investigation Unit, Fatal Motor Vehicle Crash Comparative Data Report for the State of New Jersey 1 (2020), https://www.nj.gov/njsp/information/pdf/fcr/2020_fatal_crash_report.pdf.

[4] At the same time, the Legislature also enacted N.J.S.A. 2C:12-1.1 to address hit and run accidents in which one or more victims were "seriously injured."

"criminals" and declared the legislation was intended to send a clear message: "if we find and convict you, you're looking at jail time and a big time fine."

Up to that point, leaving the scene of a motor vehicle accident constituted only a violation of the motor vehicle code under N.J.S.A. 39:4-129. The Legislature enacted N.J.S.A. 2C:11-5.1 in response to two fatal hit and run accidents involving pedestrians. As described in Governor Whitman's press release, one accident took the life of a sixteen-year-old student-athlete in June 1994. The second accident involved a fifty-year-old man who was killed while standing roadside in December 1996. See Off. of the Governor, Press Release: Governor Signs Bill to Criminalize Hit-and-Run (June 4, 1997).

The statute created a third-degree offense for a driver who knowingly absconded from the scene of an accident resulting in the death of another person under circumstances that also violated certain requirements codified in N.J.S.A. 39:4-129, including that "[t]he driver of any vehicle, knowingly involved in an accident resulting in . . . death to any person" remain at the accident scene. N.J.S.A. 39:4-129(a). The driver must stay at the scene until the driver has "give[n] his name and address and exhibit[ed] his operator's license and registration certificate of his vehicle to . . . any police officer or witness of the accident, and to the driver or occupants of the vehicle collided

16

with and render[ed] to a person injured in the accident reasonable assistance."

N.J.S.A. 39:4-129(c).

Ordinarily, violations of the rules of the road codified under Title 39 are tried in our municipal courts. Thus, the driver of any vehicle who is convicted of fleeing the scene of a fatal accident under N.J.S.A. 39:4-129(a) "shall be fined not less than $2,500 nor more than $5,000, or be imprisoned for a period of 180 days, or both." As Governor Whitman made clear in 1997, however, the Legislature adopted N.J.S.A. 2C:11-5.1 to criminalize the act of fleeing from the scene of an accident that results in the death of a person. Since then, the Legislature has twice amended N.J.S.A. 2C:11-5.1 to augment its penal consequences. Effective June 1, 2003, the Legislature rendered inapplicable the presumption of non-incarceration for third-degree offenses provided in N.J.S.A. 2C:44-1(e). In 2007, the Legislature made a violation of N.J.S.A. 2C:11-5.1 a second-degree offense. As a second-degree offense, a conviction under N.J.S.A. 2C:11-5.1 is punishable by a term of imprisonment "which shall be fixed by the court and shall be between five years and [ten] years." N.J.S.A. 2C:43-6(a)(2).[5]

---

[5] On January 11, 2022, Bill 490 was introduced in the State Senate to "upgrade the penalties for knowingly leaving the scene of a motor vehicle accident resulting in the death of another person" to a first-degree offense. See S. 490 § 1. Identical bills seeking to amend to N.J.S.A. 2C:11-5.1 to a first-

Although the precise issue we address here has not been the central focus of an opinion from this Court, the Appellate Division has discussed the need to deter drivers from fleeing the scene of an accident in another setting. In State v. Fisher, the defendant did not stop after hitting and killing a man along a rural road, allegedly under the mistaken belief he had hit a deer carcass. 395 N.J. Super. 533, 537 (App. Div. 2007). The defendant argued the duty, imposed by N.J.S.A. 39:4-129 and embedded in N.J.S.A. 5C:11-5.1, to remain at the scene or report his involvement in the accident violated his Fifth Amendment right against self-incrimination. Id. at 539-40. In response, the State noted "N.J.S.A. 2C:11-5.1 does not compel drivers to disclose anything. Rather, it argue[d] the Criminal Code encourages the physical act of remaining at the scene of the accident and the driver is compelled by the statute to report the accident only after he or she chooses to leave the scene." Id. at 540 (emphasis added).

In stressing both "[t]he failure to identify oneself and the failure to report to the police are critical components of the crime defined in N.J.S.A. 2C:11-5.1," id. at 540, the Appellate Division explained the underlying focus in N.J.S.A. 2C:11-5.1 is the driver's response to the accident, not the number

degree offense were introduced without success during the 2018-2019 and 2020-2021 legislative sessions. See S. 4082 §1 (2019); S. 364 § 1 (2020).

18

of deaths that result therefrom, see id. at 547 ("It may be impractical or counterproductive to require a driver involved in an accident always to remain at the scene, and our Legislature has determined that if a driver leaves the scene, he must still disclose his identity.").

## IV.

Against that backdrop, we consider whether a violation of N.J.S.A. 2C:11-5.1 occurs on a per-accident or a per-victim basis.

## A.

Statutory interpretation concerns purely legal questions. This Court reviews legal questions de novo, without giving deference to the interpretations of the trial court or the Appellate Division. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). The first rule of statutory interpretation is to look to the plain language of the statute and attribute to its words their ordinary meaning. State v. Sutherland, 231 N.J. 429, 443-44 (2018). "If in ascribing to those words their 'ordinary meaning and significance,' the Legislators' intent is self-evident, we need not search further for guidance." Ibid. (quoting Simon v. Cronecker, 189 N.J. 304, 332 (2007)).

In this case, our inquiry focuses on the scope of the offense set forth in N.J.S.A. 2C:11-5.1. As this Court has acknowledged, "since it is the legislative branch that defines the unit of prosecution or 'offense' and ordains

19

its punishment, we must first determine whether the legislature has in fact undertaken to create separate offenses." State v. Cole, 120 N.J. 321, 326 (1990) (quoting State v. Davis, 68 N.J. 69, 77-78 (1975)).  Guided by those principles, we begin our task by reviewing the language used by the Legislature in N.J.S.A. 2C:11-5.1.

The Legislature used the following language to describe the elements of the offense it created:

> A motor vehicle operator who knows he is involved in an accident and knowingly leaves the scene of that accident under circumstances that violate the provisions of [N.J.S.A.] 39:4-129 shall be guilty of a crime of the second degree if the accident results in the death of another person.
>
> If the evidence so warrants, nothing in this section shall be deemed to preclude an indictment and conviction for aggravated manslaughter under the provisions of N.J.S.A. 2C:11-4, reckless vehicular homicide under the provisions of N.J.S.A. 2C:11-5 or strict liability vehicular homicide under the provisions of [N.J.S.A. 2C:11-5.3].
>
> Notwithstanding the provisions of N.J.S.A. 2C:1-8 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for aggravated manslaughter . . . reckless vehicular homicide . . . or strict liability vehicular homicide and a separate sentence shall be imposed upon each such conviction.
>
> Notwithstanding the provisions of N.J.S.A. 2C:44-5 or any other provisions of law, when the court imposes

20

> multiple sentences of imprisonment for more than one offense, those sentences shall run consecutively.
>
> For the purposes of this section, neither knowledge of the death nor knowledge of the violation are elements of the offense and it shall not be a defense that the operator of the motor vehicle was unaware of the death or of the provisions of [N.J.S.A.] 39:4-129.
>
> [N.J.S.A. 2C:11-5.1 (emphases added).]

Ascribing to the words in the highlighted sections of the statute their ordinary meaning and significance, this offense can be distilled to the following four elements: (1) the driver "knows" the driver was "involved in an accident"; (2) the driver "knowingly" leaves the scene of the accident; (3) the driver violates the requirements of N.J.S.A. 39:4-129; and (4) the accident "results" in the death of another person. Nothing in the language of N.J.S.A. 2C:11-5.1 reveals or suggests the Legislature intended to charge a defendant based on the number of fatalities that result from the accident.

We agree with the Appellate Division's analysis in Fisher that the statute's plain language focuses on the driver's response. We conclude N.J.S.A. 2C:11-5.1 applies only to the act of fleeing from the scene of an accident and the number of fatalities that may result from the accident is not an element of this offense. Our conclusion is in accordance with decisions made by the majority of the courts that reviewed similar statutes adopted by our sister states.

21

As the Appellate Division here noted, most appellate courts in our sister states have found fleeing-the-scene violations to depend on the occurrence of a fatal accident rather than on the number of fatalities. The most recent endorsement of this outcome is ably expressed by the Supreme Court of Pennsylvania in <u>Commonwealth v. Satterfield</u>, 255 A.3d 438 (Pa. 2021). The Pennsylvania statute identified as "Accidents involving death or personal injury" provides, in relevant part:

> (a) General rule. -- The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid).
>
> [75 Pa. Cons. Stat. § 3742.]

The accident in <u>Satterfield</u> occurred on Interstate 83 North. 255 A.3d at 439. A tractor-trailer was traveling at sixty-seven miles per hour when it crashed into "multiple vehicles stopped at a construction zone." <u>Ibid.</u> "As a result of the crash, three people died and many others were injured." <u>Ibid.</u>

The defendant-driver fled "to the parking lot of a nearby hotel" in an attempt to conceal himself among "a crowd of people [who] had gathered to observe the accident scene." <u>Ibid.</u> When Pennsylvania police officers

22

canvassing the area "spotted him in the crowd," the defendant again attempted to flee by running from the officers. Ibid.

The Satterfield defendant "entered an open guilty plea to various offenses, including three counts of violating Section 3742," based on each person who died in the accident. Ibid. (footnote omitted). The court sentenced the defendant to an aggregate term of imprisonment of twenty-eight and one-half to sixty-three years. Id. at 440-41. The case was eventually appealed to the Supreme Court of Pennsylvania and limited to the following legal issue:

> Whether the Superior Court erred when it affirmed the trial court's imposition of illegal sentences when the trial court sentenced [Satterfield] to separate, consecutive sentences on three counts of accidents involving death or personal injury where the applicable statute contemplates a single offense for each accident regardless of the number of persons injured or killed in such an accident?
>
> [Id. at 442 (alteration in original) (quoting Commonwealth v. Satterfield, 240 A.3d 615 (Pa. 2020)).]

Against that backdrop, a unanimous Satterfield Court held, based on "the language selected by the General Assembly when enacting Section 3742, the unit of prosecution is the act of leaving the scene of an accident without first rendering aid and providing the information required by Section 3744." Id. at 447. The Court found that "[r]equiring every driver to stop and comply with the duties set forth in Section 3744 supports the" public policy objectives

23

underpinning "the statute: promoting the satisfaction of civil liability and ensuring that injured persons will be furnished with any necessary assistance." Id. at 448.

In reaching that conclusion, the Pennsylvania Supreme Court noted "[t]he vast majority of our sister states have likewise construed their similarly worded hit-and-run statutes to provide that leaving the scene of the crime alone violates the statute and that separate sentences may not be imposed for each victim in the accident." Id. at 449 n.19 (citing State v. Powers, 23 P.3d 668, 671 (Ariz. Ct. App. 2001); People v. Newton, 66 Cal. Rptr. 3d 422, 424 (Cal. Ct. App. 2007); Brown v. State, 793 S.E.2d 573, 579-80 (Ga. Ct. App. 2016); People v. Sleboda, 519 N.E.2d 512, 522 (Ill. App. Ct. 1988); Commonwealth v. Henderson, 47 N.E.3d 25, 30 (Mass. App. Ct. 2016); Firestone v. State, P.3d 279, 282 (Nev. 2004); Tooke v. Commonwealth, 627 S.E.2d 533, 536 (Va. Ct. App. 2006); State v. Ustimenko, 151 P.3d 256, 260 (Wash. Ct. App. 2007); State v. Stone, 728 S.E.2d 155, 165 (W. Va. 2012)).[6]

---

[6] Courts in Wisconsin and Texas have reached a different result. In State v. Pal, 893 N.W.2d 848, 855-56 (Wis. 2017), the Supreme Court of Wisconsin held a driver who absconds from the scene of a fatal accident can be charged with multiple counts of violating the statutory obligation to remain on the scene and provide, inter alia, his or her name, address, and the registration number of the vehicle. The Wisconsin Court in Pal relied on a principle of jurisprudence it first articulated in State v. Rabe, 291 N.W.2d 809, 818 (1980):

24

That interpretation, moreover, accords with the public policy underpinning N.J.S.A. 2C:11-5.1 -- to deter drivers from absconding from the scene of an accident that results in the death of another person. As previously discussed, the Legislature found the sanctions available under N.J.S.A. 39:4-129 were not sufficient to compel compliance with this critical part of the rules of the road codified in Title 39. It created a third-degree offense to achieve what Title 39 could not, and has tightened the sanctions since, reflecting the continuing importance of deterrence. But the increasingly severe penalties for flight do not change the focus of the offense from the flight itself to the number of victims left behind.

The State retains the authority to prosecute those drivers who violate the rights of the victims involved in an accident if the evidence so warrants. The Legislature specifically identified the victim-centric offenses that shall not

"[W]here the crime is against persons rather than property, there are, as a general rule, as many offenses as individuals affected." 893 N.W.2d at 855.

In Spradling v. State, 773 S.W.2d 553, 555 (Tex. Crim. App. 1989), the Texas Court of Criminal Appeals held a driver can be held criminally responsible for two or more persons who are killed in an accident based, in part, on the driver's failure to "render to any person injured in such accident reasonable assistance." Further, the court found "[t]he Double Jeopardy Clause has no application to a multiple victim offense when, as here, it is the legislative intent to aid all victims in a hit-and-run offense and, accordingly, to enforce this intent through the appropriate punishment for each individual not so aided." Id. at 557.

merge with a conviction under N.J.S.A. 2C:11-5.1 -- namely, aggravated manslaughter, reckless vehicular homicide, and strict liability homicide. Each act of manslaughter and homicide may be prosecuted separately,[7] and a flight charge may also be imposed, where appropriate, no matter how many counts of per-victim offenses are charged. But N.J.S.A. 2C:11-5.1 is not itself such a victim-centric offense.

Ascribing the words in N.J.S.A. 2C:11-5.1 their ordinary meaning and significance, we conclude the Legislature incorporated the obligations imposed under Title 39 with the criminal sanctions available under Title 2C to deter motor vehicle operators from knowingly leaving the scene of an accident that results in the death of another person. The act of leaving the scene of the accident under these circumstances is the basis of criminal culpability under the statute, not the number of fatalities.

---

[7] In this case, for example, the grand jury testimony of a Jersey City Police Officer who estimated defendant's car was going approximately twice the posted speed limit at the time his car struck the boys' bicycle could have supported charging defendant with two separate counts of second-degree reckless vehicular homicide, contrary to N.J.S.A. 2C:11-5(a). See State v. Stanton, 176 N.J. 75, 85 (2003) (holding "excessive speed" may be considered to determine whether a defendant was driving recklessly at the time of the incident). We therefore cannot agree with the State's claim that defendant was "rewarded by fleeing the scene and impeding any investigation into the possibility of [charging him with] vehicular homicide."

Any lingering ambiguities or uncertainties about the Legislature's intent when adopting N.J.S.A. 2C:11-5.1 are quickly overcome by the doctrine of lenity. "[W]hen interpreting a criminal statute, ambiguities that cannot be resolved by either the statute's text or extrinsic aids must be resolved in favor of the defendant." State v. Gelman, 195 N.J. 475, 482 (2008). As Justice Marshall explained in United States v. Bass:

> This principle is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity.
>
> [404 U.S. 336, 348 (1971) (citation omitted) (quoting McBoyle v. United States, 283 U.S. 25, 27 (1931)).]

Guided by these fundamental principles, and predicated on the role the Legislature has in our tripartite system of government, if the Legislature intended to hold a defendant responsible based upon the number of victims of the accident, and not for the singular act of fleeing the scene, then it is incumbent upon the Legislature to clarify "the contours of criminal activity." State in Interest of K.O., 217 N.J. 83, 97 (2014).

27

B.

The State and amicus Attorney General argue the Appellate Division misapplied the doctrine of multiplicity when it concluded defendant cannot be charged with separate violations under N.J.S.A. 2C:11-5.1 based on the number of fatalities involved in the accident. We disagree.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Our State Constitution provides similar protection against multiple convictions for the same offense: "No person shall, after acquittal, be tried for the same offense." N.J. Const. art. I, ¶ 11. This Court "has consistently interpreted the State Constitution's double-jeopardy protection as coextensive with the guarantee of the federal Constitution." State v. Miles, 229 N.J. 83, 92 (2017). The Double Jeopardy Clause provides criminal defendants three fundamental safeguards: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." State v. Kelly, 201 N.J. 471, 484 (2010) (emphasis added) (quoting United States v. DiFrancesco, 449 U.S. 117, 129 (1980)).

The constitutional protection we emphasize applies here because the offense committed by defendant is the act of knowingly leaving the scene of the accident without fulfilling the obligations imposed under N.J.S.A. 39:4-129. As this Court succinctly stated in Davis, "[i]f an accused has committed only one offense, he cannot be punished as if for two." 68 N.J. at 77. "While multiplicity begins as a charging error, it can obviously result in a defendant being improperly convicted of multiple crimes, when he or she only committed one crime." Hill-White, 456 N.J. Super. at 12; see also Kennedy, 682 F.3d at 255 ("A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment.").

V.

We now turn to the State's challenge of the Appellate Division's sua sponte decision to vacate the sentence imposed by the trial court.

A.

As part of this appeal, the State also reserved the right to challenge the Appellate Division's decision to vacate the sentence imposed by the trial court in accordance with the plea agreement. After appropriately finding that defendant could be charged with only one count of fleeing the scene of a deadly accident, the Appellate Division amended the remaining count to

29

include both victims, imposed a five-year term of imprisonment, and remanded the case to the Criminal Part judge "for the limited purpose of issuing an amended judgment of conviction consistent with this opinion."

The State argues the sua sponte approach adopted by the Appellate Division under these circumstances is not in accordance with the terms of the plea agreement negotiated by the parties and approved by the trial judge. The State relies on this Court's decision in Rodriguez, a case in which the defendant was convicted of several heinous crimes, including felony murder and robbery. 97 N.J. at 266.

In Rodriguez, the trial court imposed "separate custodial sentences on each of these convictions, which aggregated thirty years with fifteen years of parole ineligibility." Id. at 265-66. Similar to what occurred here, the trial court sentenced the Rodriguez defendant for each underlying conviction. On appeal, this Court merged two of the convictions "and, in effect, . . . remolded [them] into a single conviction." Id. at 273. Of particular relevance here, the Court concluded:

> From [the] defendant's successful appeal on merger grounds, it follows that [the] defendant would be entitled to relief in the form of the vacation of one or both of the separate sentences; further, [the] defendant would be subject to resentencing on the resultant merged conviction because the legal basis for his original sentences will have been removed or altered. Consequently, the policy against an aggregate

30

> punishment without allocation to separate convictions on individual counts or charges is not truly at issue here.
>
> Further, we do not perceive any unfairness to [the] defendant if he were resentenced in this case to a term not in excess of that originally imposed.
>
> [Ibid. (emphases added).]

Here, defendant argues the State misapplies this Court's holding in Rodriguez because the scope of the instant appeal does not include review of his sentence, and no part of the Appellate Division's decision considered the appropriateness of the sentence. He argues there is "no legal basis to permit the State to initiate a post-plea, post-sentencing, post-appeal, withdrawal from a plea agreement merely because it miscalculated the potential outcome of a defendant's appeal."

## B.

We agree with the State's position on this issue. Plea agreements "are important components of this country's criminal justice system." Bordenkircher v. Hayes, 434 U.S. 357, 361 (1978). Plea negotiations conducted by competent counsel -- which produce an offer and acceptance supported by consideration in the form of clearly agreed-upon delineations of the terms of the sentence recommendations the parties will make to the court -- are consistent with "an acceptable, legitimate, and fair administration of

31

criminal justice." State v. Pennington, 154 N.J. 344, 362 (1998). This well-established practice "accommodates the interest of society by helping the criminal justice system keep pace with the ever-burgeoning caseload. It also benefits defendants by reducing penal exposure." Ibid. Finally, "[a] sentence imposed pursuant to a plea agreement is presumed to be reasonable" because it is predicated on the defendant's voluntary, knowing waiver of his constitutional rights. State v. Fuentes, 217 N.J. 57, 70-71 (2014).

A trial judge, however, is not bound by the terms of a plea agreement negotiated and agreed to by the parties. As this Court noted in State v. Slater, "Rule 3:9-2 governs the taking of pleas" and recognizes that

> [t]he court, in its discretion, may refuse to accept a plea of guilty and shall not accept such a plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.
>
> [198 N.J. 145, 155 (2009) (emphasis added) (quoting R. 3:9-2).]

At the plea hearing conducted before the trial judge on August 10, 2018, the prosecutor placed on the record the relevant terms of the plea agreement negotiated by the parties:

32

It's the State's understanding . . . defendant, Rashaun Bell, will retract his previously entered plea of not guilty and enter a plea of guilt[y] to Counts One and Two, each charging him with second degree leaving the scene of an accident causing death . . . .

. . . .

In return for his plea of guilt[y] . . . the State will be asking for five years flat[8] on each count of leaving the scene of a fatal accident to be served consecutive for a total of ten flat . . . .

The trial judge addressed defendant directly and confirmed he assented to the terms of the plea agreement as described by the prosecutor, had sufficient time to consult with his attorney, and knowingly and voluntarily agreed to waive his constitutional right to a jury trial. The judge also made clear he was not bound to accept the plea agreement:

THE COURT: Do you also understand that I'm not bound by the plea agreement? [I]f [I] see the Pre-Sentence Report[,] I have the right to reject the plea agreement, and then you can take back what you said today. Nothing can be used against [you] and you can go to trial on the original charges. Do you understand that?

DEFENDANT: Yes.

---

[8] A "flat term" is a colloquialism used by attorneys to denote the sentence negotiated in the plea agreement will not include a period of parole ineligibility.

At the sentencing hearing held on October 26, 2018, members of the victims' families addressed the court, including Alexander's mother and Elionel's cousin. After considering the arguments of counsel and defendant's statement, the judge found aggravating factors three, the risk defendant will commit another offense; six, the extent of defendant's prior criminal record and the seriousness of the offenses defendant has been convicted; and nine, the need for deterring defendant and others from violating the law. See N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge made the following comments with respect to the terms of the plea agreement:

> This was a plea agreement which called for the defendant on Count One, knowingly leaving the scene of a motor vehicle accident, to be sentenced to a term of five years flat, as well as the same on Count Two.
>
> . . . .
>
> The defense has asked the [c]ourt to consider mitigating factors . . . in this case and, again, . . . the [c]ourt finds that [this] is not appropriate under these circumstances.
>
> . . . .
>
> The [c]ourt finds no mitigating factors in any of these offenses.

Despite not finding any mitigating factors, the judge ultimately adhered to the terms of the plea agreement and sentenced defendant to two five-year terms of imprisonment to be served consecutively. Based on this record, it is

34

clear the judge was significantly influenced by the terms of the plea agreement, which were predicated on a misapplication of N.J.S.A. 2C:11-5.1.

The Rodriguez Court's conclusion applies with equal force in this case. On appeal, defendant successfully challenged the substantive basis supporting two convictions for the same offense. The Appellate Division agreed and vacated one of the two convictions under N.J.S.A. 2C:11-5.1. Under these circumstances, the appellate court should have remanded the matter to the trial court to allow defendant to negotiate a new plea agreement with the State that the sentencing court finds acceptable. R. 3:9-2. Alternatively, defendant could have withdrawn his guilty plea and stood for trial.

If we were to uphold the approach adopted here by the Appellate Division, the penal outcome would be wholly unrelated to the legitimate factors trial courts are required to follow in dispensing appropriate criminal punishment. As Justice Handler noted in Rodriguez, "[t]he courts' sentencing responsibility under the New Jersey Code of Criminal Justice has been prescribed with painstaking care by the Legislature and should not be exercised so as to countenance anomalous results." 97 N.J. at 276 (citing State v. Roth, 95 N.J. 334, 358 (1984)). Accordingly, "the exercise of appellate original jurisdiction over sentencing should not occur regularly or routinely; in the face of deficient sentences, a remand to the trial court for resentencing is

strongly to be preferred." <u>Jarbath</u>, 114 N.J. at 411. This case presents no compelling grounds for departure from that general principle.

## VI.

To summarize, we affirm the part of the Appellate Division's decision that correctly construed N.J.S.A. 2C:11-5.1 to apply only to the act of fleeing from the scene of a fatal accident. The number of fatalities resulting from the accident is not an element of this offense.

We reverse, however, the Appellate Division's decision to vacate one of defendant's convictions and sua sponte resentence him to a five-year term of imprisonment. That approach materially altered the terms of the plea agreement negotiated by the parties, and accepted by the trial judge, and is untethered to the sentencing guidelines codified in Title 2C.

The Appellate Division's judgment is affirmed in part and reversed in part.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.